**TOWNE MANAGEMENT CORP., et al., Plaintiffs,**

v.

**HARTFORD ACCIDENT AND INDEMNITY CO., et al., Defendants.**

**Civ. A. No. R–84–2966.**

United States District Court, D. Maryland.

Oct. 18, 1985.

M. Michael Cramer, Benjamin A. Klopman, Rockville, Md., for plaintiffs.

John C. Hayes, Jr., Washington, D.C., for defendant—Hartford Acc. and Indem. Co.

Dan Free, Washington, D.C., for defendant—Howard & Hoffman.

## MEMORANDUM AND ORDER

RAMSEY, District Judge.

Presently before the Court are plaintiff's motion for partial summary judgment, defendant Hartford Accident and Indemnity Company's motion for summary judgment, and defendant Howard & Hoffman, Inc.'s motion for summary judgment. Both defendants have responded to plaintiff's motion for partial summary judgment. Plaintiff has in turn responded to both defendants' summary judgment motions. Defendant Hartford Accident and Indemnity Company has filed a reply to plaintiff's memorandum in opposition to Hartford's motion for summary judgment. In addi-

tion, plaintiff has filed a supplemental memorandum opposing defendant Hartford's motion for summary judgment and has replied to defendant Hartford's opposition to plaintiff's motion for summary judgment. Plaintiff has also filed a supplemental reply memorandum and opposition to defendant Howard & Hoffman's motion for summary judgment, and a second supplemental memorandum in response to defendant Hartford's opposition to plaintiff's motion for summary judgment.

Maryland law is the appropriate law to apply in this case. Finding oral argument unnecessary, the Court now rules pursuant to Local Rule 6 (D.Md.1985).

■ When presented with cross-motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard." Wright, Miller & Kane, *Federal Practice and Procedure:* Civil 2d § 2720.

A grant of a motion for summary judgment is appropriate only when "there is no genuine dispute as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56; *National Constructors Ass'n v. National Electrical Contractors Ass'n, Inc.,* 498 F.Supp. 510, 529 (D.Md.1980), *modified on other grounds,* 678 F.2d 492 (4th Cir.1982). In addition, there should be "no disagreement as to the inferences which may be drawn from the undisputed facts." *Steinberg v. Elkins,* 470 F.Supp. 1024, 1030 (D.Md.1979). The burden is on the moving party and any doubts as to the existence of a genuine issue of material fact will be resolved against the movant. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The Court is satisfied that the issue to be resolved in this case is one of law and not of fact, and that decision for the defendants under Rule 56 is appropriate.

Towne Management Corporation (hereinafter "Towne") was incorporated in Maryland in February, 1980 to engage in the business of property management. Eighty-one percent of the stock of Towne from February, 1980, to April 29, 1982, was owned by Diversified Property Investments, Inc. (hereinafter "Diversified"), and nineteen percent was owned by Daniel Burrier.

Prior to Towne's incorporation, defendant Hartford Accident and Indemnity Company (hereinafter "Hartford") had issued a commercial blanket fidelity bond to Diversified. Pursuant to the request of Janna Warner, Secretary of Diversified Property Investments, Inc., Hartford added Towne under the bond previously issued to Diversified, as an additional insured, effective October 24, 1980.

Plaintiff was providing property management services to Walker Mill Associates Limited Partnership in 1981 and 1982. Walker Mill Associates was an owner of a HUD apartment project in District Heights, Maryland. On April 29, 1982, Diversified sold its eighty-one percent stock interest in Towne to Daniel Burrier.

During the years of 1981 and 1982, Towne managed monies in accounts at various banks for the Walker Mill project.

These funds included HUD monies provided under an agreement between HUD, D.C. National Bank and Walker Mill whereby HUD would pay monies for project improvements. These monies were in the D.C. National Bank. Other funds included security deposit accounts which represented funds paid by the tenants of Walker Mill as security deposits. These funds were being held at Central National Bank in Maryland. Finally, Towne Management Corporation was charged with the management of an operating account for the benefit of Walker Mill. These funds were also at Central National Bank.... Towne Management Corporation had access to all of the above monies.

Plaintiff's Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment at 6.

Plaintiff argues that several of the withdrawals made from the above accounts

"could not be supported and there was no evidence that the withdrawals were made for the benefit of Walker Mill." *Id.* at 7. Plaintiff claims that $114,346 were withdrawn from the HUD monies at D.C. National Bank & Trust and $111,886 were taken from the security deposits and monies held in the operating account at Central National Bank. Plaintiff argues that these withdrawals were made by an employee of Towne, Daniel Burrier and that "[t]hese monies were not expended for the benefit of Walker Mill and were withdrawn by Daniel Burrier for purposes other than the management of the Walker Mill project for which they were intended." *Id.*

On July 27, 1983, Mr. Burrier pled guilty to the charge of interstate transportation of stolen property from D.C. to Virginia, knowing that said monies were stolen and taken by fraud. This charge related to Mr. Burrier's misappropriation of $69,700.50 of the HUD monies held at D.C. National Bank. D.C. National Bank has paid Walker Mill $69,700. Upon petition of Walker Mill, Towne has been placed into receivership.

Towne filed a proof of loss with Hartford, providing that $226,232.00 of unauthorized withdrawals were made by Daniel Burrier while an employee of Towne. Hartford has refused to make payment under the bond. Towne filed suit in the Montgomery County Circuit Court. Hartford removed the case to this Court. Towne has brought this suit "to recover monies for the entire loss it has sustained, part of which is for the benefit of D.C. National Bank in the amount of $69,700.00, which D.C. National Bank has paid over to Walker Mill." *Id.* at 9.

The motions and responses in this case focus on three main issues:

1) Did Towne sustain a "loss" within the meaning of the bond;

2) Was Daniel Burrier an "employee" of Towne; and,

3) Did defendant Howard and Hoffman, Inc. make certain misrepresentations made in relation to the addition of Towne to the bond.

For reasons detailed below, the Court finds that Towne has the burden to prove that it did sustain a loss, and has offered no proof on this issue. Accordingly, summary judgment in favor of defendant Hartford is appropriate. Because of this finding, the Court need not reach the issue of whether Daniel Burrier was an employee of Towne, within the meaning of the bond, but will assume *arguendo* that he was. The question of who was responsible for certain alleged misrepresentations made in relation to the addition of Towne under the bond is really not an issue in this case for two main reasons. First, Hartford has not relied in its motions or responses on these misrepresentations to deny liability under the bond and second, given the Court's finding that there was no "loss," Hartford incurs no liability regardless of who was responsible for any misrepresentations. Therefore, summary judgment in favor of defendant Howard & Hoffman is also appropriate.

1. *Defendant Hartford's Motion for Summary Judgment.*

■ As modified by a rider effective August 17, 1979, the Insuring Agreement states, in pertinent part, that the underwriter "agrees to indemnify the Insured against *loss of money or other property which the insured shall sustain* resulting directly from one or more fraudulent or dishonest acts of an Employee, acting alone or in collusion with others, to an amount not exceeding in the aggregate the amount stated in item 3 of the Declarations."

The rider also added the following paragraph to the Insuring Agreement:

Dishonest or fraudulent acts as used in this Insuring Agreement shall mean only dishonest or fraudulent acts committed by such Employee with the manifest intent:

(a) *to cause the Insured to sustain such loss; and,*

(b) to obtain financial benefit for the Employee, or for any other person or organization intended by the Employee

to receive such benefit, other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment.

(*Emphasis added*).

It is clear from the plain language of the Insuring Agreement that Hartford need only indemnify Towne if Towne has "sustained" a *"loss"* of money or other property.

It is elementary that a surety or insurer on a fidelity bond is not liable unless the insured employer actually suffers a loss. An undertaking to indemnify "against the direct loss sustained while this bond is in force" refers to an actual present loss, as distinguished from a theoretical or bookkeeping loss.

35 Am.Jur.2d, Fidelity Bonds and Insurance § 39, p. 530 (*citations omitted*). Numerous Fourth Circuit cases support this view. *See* Note 1 *infra* and accompanying text.

■ Defendant Hartford states that:

With the exception of three checks totaling $798 there is absolutely no evidence that any money taken from the Walker Mill accounts controlled by Towne Management Corporation was paid to Daniel Burrier or any other individual employed by Towne Management Corporation. The undisputed facts are that Towne Management took the funds out of the Walker Mill accounts by checks payable to itself.

Hartford's Memorandum of Points and Authorities in Support of Opposition to Motion for Partial Summary Judgment at 3. On page 5 of this memorandum, Hartford sums up its position by stating that "[w]hat is present here is evidence that the insured, Towne Management Corporation, transferred money from accounts it controlled to itself."

This simply is not sufficient to establish that Towne suffered a loss. As the Court stated in *Phoenix Savings and Loan, Inc. v. The Aetna Casualty and Surety Company,* "[t]he bond insured Phoenix, the corporation. Thus it covers loss to Phoenix, not loss to customers, stockholders, or creditors." *Phoenix,* 266 F.Supp. 465, 469 (D.Md.1966), *reversed on other grounds,* 381 F.2d 245 (4th Cir.1967) 302 F.Supp. 832 (D.Md.1969), *reversed on other grounds,* 427 F.2d 862 (4th Cir.1970).[1]

Plaintiff makes the following argument in response to defendant Hartford's position that Towne did not sustain a loss:

The facts however, show that Towne Management has been dissolved.... The fact that monies amounting to $226,232.00 were transferred from the trust funds held by Towne Management Corporation, and then disappeared as it appears in this case, indicates that a loss covered under the bond has been made out by Towne Management.

Plaintiff's Memorandum in Support of Opposition to Motion for Summary Judgment of Defendant Hartford Accident and Indemnity Company at 2.

Plaintiff states that it does not know whether the thefts were recorded as book-

---

1. *See also Kerr v. Aetna Casualty and Surety Co.,* 350 F.2d 146, 150 (4th Cir.1965) ("it is important to note that the bond insured only the several corporations.... Losses in connection with fraud perpetrated on the corporations' creditors or on the Insurance Commissioner are not covered by the bond"); *In re Schulter, Green & Co.,* 93 F.2d 810, 812 (4th Cir.1938) ("We must therefore inquire in the first instance whether the company, in the language of the bond, suffered a loss through any dishonest or criminal conduct of its employee. The conduct of Miss Seay may fairly be described as dishonest or criminal; but it does not follow that thereby the company suffered a loss. On the contrary, it appears that the money derived from her unlawful behavior was deposited in the company's bank account, and, unless the company thereafter lost the funds as the result of dishonesty or criminal conduct, the company suffered no detriment.... there was no basis for the broad view that any loss by a customer from the misconduct of the employee was recoverable under the bond"). *See also Fidelity & Casualty Co. of New York v. Hoyle,* 64 F.2d 413 (4th Cir.1933); *Fidelity and Deposit Co. of Maryland v. Usaform Hail Pool, Inc.,* 463 F.2d 4 (5th Cir. 1972), cert. den., 425 U.S. 950, 96 S.Ct. 1725, 48 L.Ed.2d 194.

keeping entries or were concealed, and that this is for Hartford to prove. *Id.* at 4.

Thus, instead of refuting Hartford's facts on the issue of where the money from the Walker Mill accounts went, plaintiff argues that Hartford has the burden of proving that the money went for legitimate corporate expenses, *id.* at 3, and that the fact that the money has "disappeared" is enough to prove that Towne sustained a loss.

There is no question that if plaintiff has the burden of proving that a loss was sustained, as defendant Hartford argues, that plaintiff cannot meet that burden simply by arguing that placement of Towne into receivership on September 9, 1983, a year after the last withdraw, is "conclusive evidence that ... a loss has been sustained." *Id.* at 5.

■ Plaintiff relies on the case of *Fidelity and Deposit Co. of Maryland v. Usaform Hail Pool, Inc.*, 523 F.2d 744 (5th Cir.1975), cert. den. 425 U.S. 950, 96 S.Ct. 1725, 48 L.Ed.2d 194, to argue that Hartford bears the burden of proof on the loss issue. However, Towne stretches this case too far when it cites it for the proposition that "Hartford must first prove that the stolen money was spent by Daniel Burrier for corporate expenses of Towne Management Corporation and second, that those expenses were legitimate." Plaintiff's Memorandum in Support of Opposition to Motion for Summary Judgment of Defendant Hartford at 4. While it is true that *Usaform* places the burden on the insurer to prove that certain known expenditures were valid, it does not require the insurer to prove what those expenditures were.

In *Usaform*, the inquiry was whether transfers from one insolvent corporation to another were for legitimate business purposes. The insurer in that case argued

that the transfers were valid. In this case, Hartford is not arguing that particular known transfers of money were made for legitimate corporate purposes. Hartford is simply arguing that the evidence shows that the money went to Towne Management. Reply of Defendant Hartford to Plaintiff's Memorandum in Opposition to Hartford's Motion for Summary Judgment at 4. There simply is no evidence in this case concerning where the money went after all but a tiny percentage of it went to Towne.[2] All Towne seems to be able to argue about this money is that Towne did not have any of it left a year later. If the corporation that received the money cannot produce any more evidence than this, it is simply unreasonable and illogical to require an outside corporation to discover where Towne spent this money. The burden of proof, at least as to this initial information about how the money was spent, is appropriately placed on Towne, the corporation that spent it. Clearly Towne has failed to meet this burden. Accordingly, summary judgment for defendant Hartford is appropriate.

## II. *Defendant Howard & Hoffman, Inc.'s Motion for Summary Judgment.*

In Count V of its amended complaint, Towne states a claim against defendant Howard & Hoffman, Inc. for certain alleged misrepresentations made in procuring coverage for Towne under the bond. In Towne's motion for summary judgment, it argues that Howard & Hoffman should be held liable for negligent misrepresentation and that such liability is for the damage resulting from such misrepresentation, which Towne states to be the loss of the full value of its claim. Towne states that defendant Hartford has in part denied Towne's claim because of these misrepre-

---

**2.** While it is unclear from the papers filed in this case how much money went to Burrier, it appears it was an amount between $798.00 and $2,871.22. *Cf.* Hartford's Memorandum of Points and Authorities in Support of Opposition to Motion for Partial Summary Judgment at 3, with Hartford's Statement of Material Facts as to Which no Genuine Issue Remains at 5–7.

Taking the higher figure, this still amounts to only slightly over one percent of the money at issue. As with the money paid to Towne, plaintiff has not produced any evidence of what this money was used for. Accordingly, the Court finds no reason to treat this money differently than the money paid into Towne's accounts.

sentations. Plaintiff's Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment at 17.

The elements of the tort of negligent misrepresentation in Maryland are as follows:

(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;

(2) the defendant intends that his statement will be acted upon by the plaintiff;

(3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;

(4) the plaintiff, justifiably, takes action in reliance on the statement; and

(5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Martens Chevrolet, Inc. v. Seney,* 292 Md. 328, 439 A.2d 534, 539 (1982).

The clearest reason why Towne has failed to make out the elements of this tort against defendant Howard & Hoffman is that Towne has not suffered any damage proximately caused by Howard & Hoffman's alleged negligence. Defendant Hartford simply has not relied in its motion for summary judgment in this case nor in its response to Towne's motion on any misrepresentations in order to deny liability under the bond. As defendant Howard and Hoffman states, "there is no genuine issue of material fact as to whether this defendant achieved the result requested by plaintiff, *i.e.,* to have Towne ... added to the existing commercial blanket bond." Memorandum of Points and Authorities at 1–2. Furthermore, in light of this Court's finding that Hartford is not liable to Towne because Towne sustained no loss, the issue of any misrepresentations made in the procurement of Towne's coverage under the bond is moot.

This Court finds that Towne did not suffer any damage because of Howard & Hoffman's alleged negligence and therefore grants summary judgment for defendant Howard & Hoffman.

Accordingly, for the reasons stated herein, it is this 18th day of October, 1985, by the United States District Court for the District of Maryland,

ORDERED:

1. That plaintiff's motion for partial summary judgment is hereby DENIED;

2. That defendant Hartford Accident and Indemnity Company's motion for summary judgment is hereby GRANTED;

3. That defendant Howard & Hoffman, Inc.'s motion for summary judgment is hereby GRANTED; and,

4. That the Clerk of the Court shall mail copies of this Memorandum and Order to all counsel of record.